

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1723-12

**DAVID EARL BROWN, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FIRST COURT OF APPEALS
## HARRIS COUNTY

JOHNSON, J., delivered the opinion of the Court in which MEYERS, WOMACK, COCHRAN, and ALCALÁ, JJ., joined. COCHRAN, J., filed a concurring opinion in which MEYERS, and ALCALÁ, JJ., joined. PRICE, J., filed a dissenting opinion. KEASLER, J., filed a dissenting opinion in which KELLER, P.J., and HERVEY, J., joined.

## O P I N I O N

Appellant was on trial for murder. In the early morning hours of what would have been the final day of trial in the guilt phase, appellant sustained a gunshot wound to the head. After a one-day recess, the trial judge ruled that appellant's absence from trial was voluntary because there was evidence that the injury may have been self-inflicted. The court conducted the remainder of the guilt trial and the entire punishment trial in appellant's absence. Appellant appealed the trial court's refusal to hold a formal hearing to determine whether he was incompetent to stand trial after

sustaining the gunshot wound. The appellate court held that appellant should have been granted a competence hearing before the jury made its guilt determination and remanded the cause for a new trial.[1] This decision remained unchanged after rehearing.[2] We granted the state's petition for discretionary review on four grounds.[3] Because we find that the trial court did not follow relevant procedures set out in Texas statutes and Supreme Court precedent, we remand to that court for a retrospective hearing to determine whether appellant was incompetent at any or all of the guilt and punishment phases and sentencing.

## I. Facts

Appellant was charged with the murder of Whitt Bruney, his neighbor. It was undisputed that appellant shot and killed Bruney, but appellant claimed self-defense. On March 9, 2010, during the guilt phase, the court adjourned for the day so that the defense could call its final witnesses the next morning. Appellant had already testified and been cross-examined.

When the trial convened on the morning of appellant's suicide attempt, the trial court stated that its "understanding of the law is" that appellant had voluntarily absented himself from trial by attempting to commit suicide, and it then recessed for the day.

The next day, March 11, the court agreed to hear testimony on defense motions for a

---

[1]  *State v. Brown*, 393 S.W.3d 308 (Tex. App.—Houston [1st Dist.] 2012).

[2]  *State v. Brown*, 393 S.W.3d 308, 315 (Tex. App.—Houston [1st Dist.] 2012) (op. on reh'g).

[3]  1. Did the trial court abuse its discretion when it determined that Appellant's absence from his trial due to his attempted suicide was voluntary?
     2. Is a defendant who voluntarily renders himself absent from trial entitled to a competency evaluation?
     3. Is a trial court required to immediately stay proceedings for a competency evaluation of an unconscious defendant, or does the trial court have the discretion to order the competency evaluation at any time before sentence is pronounced?
     4. If a trial court fails to stay proceedings and order a competency evaluation, is abatement for a retrospective competency evaluation the proper remedy or should an appellate court conduct a harm analysis?

continuance and a competence hearing. Defense counsel filed a motion for continuance based on both involuntary absence (Art. 33.03)[4] and incompetence (Arts. 46B.003-005). Both the state and appellant called witnesses.

Officer Weller, the first police officer to respond, arrived at the scene after paramedics had taken appellant to the hospital. He testified that, at approximately 4:45 a.m. on the morning of March 10, John Overman, appellant's neighbor, heard a gunshot but did not investigate. Half an hour later, Overman went out for a walk and found appellant on the ground, bleeding from his face. Police and EMS were called, but Officer Weller did not arrive until after appellant had been taken to a hospital, there were no witnesses to the shooting, and there was no way to know who shot appellant, but that, in his opinion, the gunshot wound was self-inflicted.[5] He had spoken with appellant's roommate, Gene Eignus, who had stated that appellant "had been despondent over the way the Court proceedings were going."

Officer Leos, the second officer on the scene, had gone to the hospital and had spoken with a doctor there who had described appellant's injuries to Officer Leos: a bullet went through appellant's mouth and one eye and lodged in appellant's brain.[6] The doctor said that appellant would survive but that he could not say if the wound was self-inflicted. Officer Leos also testified that

[4] Article 33.03 provides: "In all prosecutions for felonies, the defendant must be personally present at the trial, and he must likewise be present in all cases of misdemeanor when . . .; provided, however, that in all cases, when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion. When the record in the appellate court shows that the defendant was present at the commencement, or any portion of the trial, it shall be presumed in the absence of all evidence in the record to the contrary that he was present during the whole trial. . . ."

[5] The officer testified that his opinion was based on both the opinion of Houston Fire Department members, who arrived on the scene first, that the wound was self-inflicted and the fact that the pistol was found lying in the grass next to appellant's unconscious body when he was discovered.

[6] The court of appeals mistakenly attributed Officer Leos's testimony to Officer Weller. *State v. Brown*, 393 S.W.3d at 311.

appellant's hands were not tested for gunshot residue and no fingerprints were lifted from the gun.

Appellant's psychiatrist, Dr. Root, testified[7] that he had been treating appellant for depression arising from the killing of Whitt Bruney. Dr. Root also testified that, given what he had been told about the injuries that appellant had sustained, it was unlikely that he was able to assist his attorneys during the remainder of the trial. Defense counsel stated for the record that appellant's injuries resulted from a bullet that went through appellant's mouth and lodged in the left frontal lobe,[8] that there had been one surgery performed on appellant, and that bullet fragments remained in appellant's brain. The state did not object or contradict defense counsel's statements. Dr. Root testified that the left side of the brain performs interpretation of facts and controls language, speech, and memory of language and speech. In addition, injuries caused by a bullet track are exacerbated by damage from the shock wave that radiates from the bullet track. He opined that the degree of recovery from such an injury is highly individual and agreed with defense counsel that recovery sufficient to regain competence was possible, but Dr. Root thought it unlikely. He also said that, if appellant had, in fact, tried to commit suicide, the attempt would "suggest" mental illness.

In an attempt to show that appellant's injuries may not have been self-inflicted, defense counsel's motion for continuance argued to the trial court that there were no witnesses, appellant had received death threats up to the day before he suffered the gunshot wound, and the gun was not recognized as being owned by appellant. Defense counsel also argued that a competency evaluation was required because appellant was unable to assist in his own defense, citing Articles 46B.003,

---

[7] The psychiatrist's testimony was obtained by telephone and was given in the judge's chambers and outside the presence of the jury.

[8] Appellant's roommate testified that the injury was to the left temporal lobe, but that section of the brain is not on the bullet track, which was consistently described as going through the mouth and eye and into the brain tissue above the eye, which is the frontal lobe.

46B.004, and 46B.005. Counsel stated that he was supposed to have had at least one more meeting with appellant to discuss their rebuttal and punishment witnesses and to discuss their strategy for the punishment trial, if it became necessary. Appellant's injuries prevented that meeting and prevented him from being present and able to assist his attorneys at the remainder of the guilt phase and the entirety of the punishment phase.

After hearing the testimony about appellant's injuries and current status, the trial court found that appellant had voluntarily absented himself from trial and that he was competent, based on the trial judge's understanding of the law and appellant's prior testimony. It denied the defense motion for a continuance and a competence evaluation and then continued the guilt phase with the closing arguments of the parties. After appellant was found guilty, the trial court began the punishment phase. The record reflects that appellant was not present. Witnesses for both the state and appellant testified. Appellant's roommate testified that appellant was in Ben Taub Hospital and on life support. The jury assessed a sentence of ten years' imprisonment.

One month later, on April 15, 2010, the trial court held the sentencing hearing. Appellant was present.[9] Defense counsel again asked for a continuance so that appellant could be evaluated for competence, noting that, if at any time during trial, the defendant's competence to stand trial is brought into question, there must be an inquiry into whether there is some evidence from any source that would support a finding that the defendant may be incompetent. Art. 46B.004(c).[10] Counsel argued that, even though appellant had recovered sufficiently to be present in court, his lawyers did

---

[9] Appellant was physically recovered enough to be "wheeled in from the hospital to be sentenced." *Brown v. State*, 393 S.W.3d 308, 318 (Tex. App.—Houston [1st Dist.] 2012) (op. on reh'g). There is no discussion by the court of appeals of the level of appellant's neurological recovery.

[10] Defense counsel cited Art. 4602, §2(b), an article that seems not to exist. Counsel's argument indicates that he was referring to Art. 46B.004(c).

not think that appellant was able "to understand the nature of the proceedings against him and unable . . . to consult with" his lawyers. The trial court denied the motion and proceeded to sentencing. During that hearing, the following colloquy occurred between appellant and the trial court.

THE COURT: Okay. Mr. Brown, will you please stand.

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Mr. Brown, at this time in accordance with the verdict of the jury having assessed your punishment at ten years, it's my duty at this time to follow through with that. So, at this time I am–a jury having found you guilty of the offense of murder, I am assessing punishment at ten years in the Institutional Division of the Texas Department of Corrections. I'll give you credit for your back time. Good luck to you, sir.

THE DEFENDANT: Thank you, ma'am.

The record thus reflects that appellant was able to stand and to respond verbally to requests from the trial court. As the court of appeals noted, there was no inquiry into whether appellant could assist his attorneys and had a rational as well as factual understanding of the proceedings. Pursuant to the jury's verdict on punishment, the trial court sentenced appellant to ten years' imprisonment.

## II. Court of Appeals's Opinion

In its original opinion,[11] the court of appeals summarized the record testimony about appellant's gunshot wound and then addressed appellant's claim that the trial court abused its discretion when it denied the requested continuance and found that appellant had voluntarily absented himself from trial. The court of appeals held that, because appellant was in the intensive care unit of a hospital at the time of the hearing, all the evidence from the informal hearing held by the trial court "supported a finding that [appellant] did not have sufficient present ability to consult

---

[11] *Brown*, 393 S.W.3d 308 (Tex. App.—Houston [1st Dist.] 2012).

with his lawyer as a result of the gunshot wound." *Brown*, 393 S.W.3d at 313. "At that point, the trial court was required to stay all proceedings in the case pending a competency examination and incompetency trial." *Id*. at 313. The court of appeals also noted that appellant was present at the sentencing hearing but that "[n]othing in that record indicates anyone attempted to communicate with Brown or that he had a rational as well as factual understanding of the proceedings." *Id.* at 312. "Because the issue of [appellant's] incompetence was raised before the jury determined his guilt and the trial court erred in finding him competent," the court of appeals reversed the trial court's judgment and remanded the case for a new trial. *Brown*, 393 S.W.3d at 315.

On the state's motion for rehearing, which argued that a person who voluntarily absents himself from a trial is not entitled to a competency evaluation, the court of appeals reaffirmed its initial holding[12] that appellant "did not voluntarily absent himself from trial because under article 46B.005 the trial court was required to stay the proceedings and conduct a formal competence examination." *Id.* at 315-16 (op. on reh'g). The court of appeals noted that the state supported its position with cases decided under a now-amended law and that the only case cited by the state that applied current law was an unpublished court-of-appeals case in which the defendant attempted suicide by overdosing on pills and defense counsel did not object to continuing the punishment phase. *Grizzard v. State*, No. 01-06-00930-CR, 2008 WL 2611865 (Tex. App.—Houston [1st Dist.] July 3, 2008, no pet.) (mem. op., not designated for publication). The court of appeals noted that a head injury produces injuries that are unlike the consequences of overdosing on medication. *Brown* at 316 (op. on reh'g). The existence of more than a scintilla of evidence suggesting appellant's incompetence—he was on life support in a Houston hospital—should have triggered a competence

---

[12] *Brown*, 393 S.W.3d at 315 (op. on reh'g).

hearing, rather than a voluntary-absence determination. *Id.* at 317. The appellate court also conducted a harm analysis and, without determining whether the error was structural, held that appellant had suffered harm. *Id.*

### III. Analysis

In its first ground for review, the state asks whether the trial court abused its discretion in concluding that appellant's absence from trial was voluntary.[13] In its second and third grounds for review, which the state argues together, the state asks, "Is a defendant who voluntarily renders himself absent from trial entitled to a competency evaluation?" and "Is a trial court required to immediately stay proceedings for a competency evaluation of an unconscious defendant, or does the trial court have the discretion to order the competency evaluation at any time before sentence is pronounced?" In its fourth ground for review, the state asks, "If a trial court fails to stay proceedings and order a competency evaluation, is abatement for a retrospective competency evaluation the proper remedy or should an appellate court conduct a harm analysis?"

"A defendant has the right to be competent throughout his or her entire trial." *Garay v. State*, No. 01-11-00595-CR, 2012 WL 2159296, at *2 (Tex. App.—Houston [1st Dist.] June 14, 2012) (mem. op., not designated for publication) (citing *Casey v. State*, 924 S.W.2d 946, 949 (Tex. Crim. App. 1996)). The "entire trial" includes the punishment stage. *See Illinois v. Allen*, 397 U.S. 337, 338 (1970) ("One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial."); *Adeleye v. State*, Nos.

---

[13] Texas Rule of Appellate Procedure 66.3 provides six situations in which this Court is authorized to review a case, all of which require an action by a court of appeals. On its face, this ground is subject to refusal pursuant to *DeGrate v. State*, 712 S.W.2d 755, 756 (Tex. Crim. App. 1986). However, the argument is based on objections to actions by the court of appeals.

01-10-00881-CR, 01-10-00882-CR, 2013 WL 485766, at *6 (Tex. App.—Houston [1ˢᵗ Dist.] Feb. 07, 2013) (mem. op., not designated for publication) (reviewing trial court's finding that appellant was competent at the punishment stage); *Gonzales v. State*, Nos. 05-08-00524-CR, 05-08-00525-CR, 2009 WL 242531, at *3-*4 (Tex. App.—Dallas Feb. 03, 2009, pet. ref'd) (mem. op., not designated for publication) (reviewing trial court's competence determination after informal inquiry at punishment stage); *Baldwin v. State*, 227 S.W.3d 251, 254-55 (Tex. App.—San Antonio 2007) (reviewing appellant's claim of incompetence at the punishment stage). Article 46B codifies this constitutional due-process right: A defendant is incompetent if he lacks the ability to reasonably communicate with his attorney or if he lacks a rational and factual understanding of the proceedings against him. Art. 46B.003(a); *see also Ex parte LaHood*, 401 S.W.3d 45, 56 (Tex. Crim. App. 2013) ("Although an attempted suicide is disturbing, it does not necessarily prove that a person lost the ability to meaningfully consult with his attorney or that he lacked a rational and factual understanding of the charged offense and trial proceedings.").

Pursuant to Texas statutes, either party may suggest that a defendant might be incompetent to stand trial, or the trial court may raise the issue *sua sponte*. Art. 46B.004(a). Once a defendant's incompetence has been suggested, the process for making that evaluation occurs in two steps. First, the trial court must hold an informal inquiry to determine "whether there is some evidence from any source" supporting the defendant's incompetence. Art. 46B.004(c). "Some evidence" is a low bar; it requires a showing of only a quantity more than none or a scintilla. *Turner v. State*, No. AP-76,580, 2013 WL 5808250, at *11 (Tex. Crim. App. Oct. 30, 2013) (quoting *Ex parte LaHood,* 401 S.W.3d at 52-53). If the informal inquiry yields a determination by the court that there is evidence

to support the defendant's incompetence, the court must empanel a jury[14] and conduct a trial to determine whether the defendant is competent. *See* Arts. 46B.004(d), 46B.005(d). In general, once the trial court conducts an informal inquiry and determines that there is at least a scintilla of evidence that supports holding a competence trial, the court must "stay all other proceedings in the case" pending a jury finding on competence. Art. 46B.004(d). However, when the competence issue is not raised until after the trial on the merits has begun, the trial court has the discretion to postpone the competence evaluation until any time before sentencing, but the trial court "shall make the determination as soon as reasonably possible" after a verdict is returned. Art. 46B.005(d).

It is fundamental that a defendant has the right to be competent for the duration of his trial. Art. 46B.005(d) (allowing the competence issue to be raised before or during trial); *Ex parte LaHood*, *supra*, at 57 (citing *Drope v. Missouri*, 420 U.S. 162, 181 (1975) ("Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial.")).

In *Drope*, the United States Supreme Court considered circumstances similar to those presented here. On the second day of his trial, Drope shot himself in the abdomen and did not appear

---

[14] Such a jury must be separate from that empaneled for the trial on the merits. Art. 46B.051(c). However, a jury trial is not now always required, as it was under the old version of the statute. The new version of the statute now states,

> (b) Except as provided by Subsection (c), the court shall hold a trial under Subchapter C before determining whether the defendant is incompetent to stand trial on the merits.
> (c) A trial under this chapter is not required if: Neither party's counsel requests a trial on the issue of incompetency; (2) neither party's counsel opposes a finding of incompetency; and (3) the court does not, on its own motion, determine incompetency.

Art. 46B.005(b), (c).

Here, we remand for a jury trial on competence because appellant requested one and the provisions in subsection (c) are inapplicable.

for trial. He remained hospitalized during the remainder of the trial, which continued through punishment without Drope's presence. Drope filed a motion for new trial, alleging that the trial court had erred in continuing the trial without evidence that his absence from the trial was voluntary. At the hearing on Drope's motion, the record reflected that Drope "woke up in the hospital" and that he had told a police officer that he had shot himself. *Id.* at 167. The trial court found, based on the evidence, that Drope's absence "was due to his own voluntary act in shooting himself; . . .." *Id.* at 168.

Almost two years after his trial ended, Drope filed a motion to vacate the conviction and sentence, alleging that his constitutional rights had been violated because the trial court had failed to order a psychiatric examination before trial and had continued the trial in Drope's absence. *Id.* When the hearing on the motion was held, a psychiatrist who had examined Drope before his trial testified that, in his opinion, "There was reasonable cause to believe that a person who attempted to commit suicide in the midst of a trial might not be mentally competent to understand the proceedings against him" and that a competence evaluation should be done. *Id.* at 169.

On appeal, the appellate court held that "petitioner's suicide attempt did not create a reasonable doubt of his competence as a matter of law, that petitioner had failed to demonstrate the inadequacy of the procedures employed for protecting his rights, and that the finding of the trial court was not clearly erroneous." *Id.* at 170. The Missouri Supreme Court affirmed the lower appellate court's decision. *Id.* at 171.

The United States Supreme Court granted certiorari on two claims: petitioner was deprived of due process of law by the failure of the trial court to order a psychiatric examination with respect to his competence to stand trial; and by the conduct, in his absence, of a portion of his trial on an

indictment charging a capital offense.

Citing Blackstone,[15] the United States Supreme Court stated that the prohibition against trying a mentally incompetent defendant "is fundamental to an adversary system of justice." *Id.* at 172. "In *Pate v. Robinson*, 383 U.S. 375 (1966), we held that the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Id.* It continued,

> In the present case there is no dispute as to the evidence possibly relevant to petitioner's mental condition that was before the trial court prior to trial and thereafter. Rather, the dispute concerns the inferences that were to be drawn from the undisputed evidence and whether, in light of what was then known, the failure to make further inquiry into petitioner's competence to stand trial, denied him a fair trial. In such circumstances we believe it is "incumbent upon us to analyze the facts in order that the appropriate enforcement of the federal right may be assured." *Norris v. Alabama*, 294 U.S. 587, 590 (1935).

*Id.* at 174-75.

The Supreme Court's opinion discussed voluntary absence only in the context of the pleadings and the positions of the parties that were argued in trial and on appeal. The entirety of its analysis of the law was a discussion of competence to stand trial, and its holding was on that basis.

> Our resolution of the first issue raised by petitioner [failure to order a psychiatric examination] makes it unnecessary to decide whether, as he contends, it was constitutionally impermissible to conduct the remainder of his trial on a capital offense in his enforced absence from a self-inflicted wound.

*Drope*, at 182.

The Supreme Court went on.

> The Missouri Court of Appeals concluded that, had further inquiry into petitioner's competence to stand trial been constitutionally mandated in this case, it

---

[15] If a person became "mad" after pleading, he should not be tried, "for how can he make his defense?" 4 W. Blackstone, Commentaries *24.

would have been permissible to defer it until the trial had been completed. Such a procedure may have advantages, at least where the defendant is present at the trial and the appropriate inquiry is implemented with dispatch. See Note, 81 Harv. L. Rev., at 469; *Hansford v. United States*, 127 U. S. App. D. C. 359, 360, 384 F.2d 311, 312 (1966) (rehearing en banc denied) (statement of Leventhal, J.); *Jackson v. Indiana*, 406 U.S., at 741. However, because of petitioner's absence during a critical stage of his trial, neither the judge nor counsel was able to observe him, and the hearing on his motion for a new trial, held approximately three months after the trial, was not informed by an inquiry into either his competence to stand trial or his capacity effectively to waive his right to be present.

The question remains whether petitioner's due process rights would be adequately protected by remanding the case now for a psychiatric examination aimed at establishing whether petitioner was in fact competent to stand trial in 1969. Given the inherent difficulties of such a *nunc pro tunc* determination under the most favorable circumstances, *see Pate v. Robinson*, 383 U.S., at 386-387; *Dusky v. United States*, 362 U.S., at 403, we cannot conclude that such a procedure would be adequate here. *Cf. Conner v. Wingo*, 429 F.2d, at 639-640. The State is free to retry petitioner, assuming, of course, that at the time of such trial he is competent to be tried.

*Id.* at 182-83.

The Supreme Court clearly made competence to stand trial the first issue to be resolved. If this appellant was not competent, the issue of the voluntariness of appellant's physical absence from the trial is immaterial as to whether the trial court's judgment must be reversed. A determination on the voluntariness of the absence of the defendant would not resolve this appeal. It is true that the Code provides that, if a defendant's absence from the trial was voluntary, Article 33.03 permits the trial to continue until its conclusion in the defendant's absence. Ordinarily, this provision applies when a defendant jumps bail and absconds, but applying the concept of voluntary absence to a person who is incompetent is problematic. We agree with the United States Supreme Court that, under such circumstances, logic compels us to first decide whether a defendant is competent and, only if he is found to be competent, to decide whether his absence was voluntary. To do otherwise would deny a defendant the statutory right to have a jury decide whether he is competent. Only after

a determination of competence is made should a court consider the question of the voluntariness of a competent defendant's absence.

Unlike the appellant in *Drope*, some evidence about appellant's competence immediately after his gunshot wound was introduced at a hearing on that issue. During that hearing, the trial court decided this case on the basis of the voluntariness of appellant's absence. "Some evidence" is a low bar; it requires a showing of only a quantity more than none or a scintilla. *Turner v. State*, No. AP-76,580, 2013 WL 5808250, at \*11 (Tex. Crim. App. Oct. 30, 2013) (quoting *Ex parte LaHood,* 401 S.W.3d at 52-53). Appellant's psychiatrist, who had treated appellant in the period between the shooting and the suicide attempt, testified that, from what he had been told about appellant's injuries, appellant could not assist his attorneys. We are unpersuaded that the lapse of time alone is an adequate reason to reverse for a new trial rather than for a retrospective competency evaluation. The court of appeals, therefore, erred by determining that a reversal for a new trial was the appropriate remedy rather than abating for a retrospective competency evaluation. We note that, as the Supreme Court determined in *Drope*, there are circumstances in which a retrospective competency evaluation may not be appropriate due to the lapse of time or other circumstances that would indicate that it cannot reliably be done, but we are unpersuaded that those circumstances preclude a retrospective competency evaluation in this case, where "some evidence" about appellant's competence is available for a jury's consideration. Given the record, we find that a retrospective competence hearing as to both guilt and punishment phases is the appropriate remedy.

## IV. Conclusion

Neither the trial court nor the court of appeals followed the analysis structures set out in Texas statutes and Supreme Court precedent. We remand this cause to the trial court for a

retrospective competence hearing, using procedures that are in accord with our state statutes and the Supreme Court's ruling in *Drope*, to determine whether appellant was competent. Upon remand, a jury must determine whether appellant was competent to stand trial by assessing whether he did not have sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding or a rational as well as factual understanding of the proceedings against him. *See* Art. 46B.003.

If the jury determines that appellant was competent, then the trial court shall consider whether the appellant's physical absence may properly be characterized as a voluntary absence under Article 33.03. If, however, the jury determines that appellant was incompetent, the trial court need not reach the question of whether his physical absence from the trial during the remainder of the guilt phase and at the punishment phase was voluntary under Article 33.03; under Texas law, the necessary consequence of a determination of incompetence is that the trial should not have proceeded beyond the point of appellant's incompetence except as permitted by Texas law. In this case, the trial court shall proceed pursuant to the dictates of Article 46B.003.

Delivered: March 19, 2014
Publish